## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**STEVEN JAY PINCUS HUETER**,

Plaintiff,

v.

**LEALAIALOA FRITZ MICHAEL KRUSE, et al.**,

Defendants.

Case No. 1:20-cv-03686 (TNM)

## <u>MEMORANDUM OPINION</u>

Originally proceeding *pro se*, and now with counsel, Steven Jay Pincus Hueter asserts

claims against over 70 Defendants relating to actions taken by the Government of American

Samoa.  Before the Court are multiple motions, including one from Secretary of the Interior Deb

Haaland to dismiss Hueter's claims against her.  The Court will grant that motion and dispose of

three others currently ripe for decision.

## I.

Hueter challenges four types of governmental conduct.  He first alleges that the American

Samoa Government's early policies to stop the spread of COVID-19, including a prohibition on

public gatherings, violated several of his rights, including his right to exercise his religion.  *See*

Third Am. Compl. at 25–27, ECF No. 104 (TAC).[1]  Next, he claims that members of American

Samoa's legislature and judiciary improperly used federal COVID relief funds for non-COVID

purposes.  *See id.* at 45–46, 56–57.  Third, he challenges the decision to allow a fishing vessel to

---

[1]  All page citations refer to the pagination generated by the Court's CM/ECF system.

dock on the island without passing through COVID protocols.  *See id.* at 59–63.  Finally, he

challenges decisions by two Samoan judges during his lawsuits there.[2]  *See id.* at 24, 27–28.

Almost all Defendants, including some federal officials, live in American Samoa.

Secretary Haaland does not.  *See* TAC at 25.  His operative Complaint requests millions in

damages, *see id.* at 41–42, an injunction against the docking of the fishing vessel, *see id.* at 63,

and other injunctive relief, *see id.* at 37–39.  In previous complaints, Hueter sought to enjoin the

island's COVID-19 policies for their encroachments on his free exercise rights.  *See* Amended

Compl. at 11, ECF No. 6.  But he disclaims any such request in his operative Complaint.  *See*

TAC at 37–38, 63.  So for the alleged violation of his free exercise rights, Hueter seeks only

damages.

All Defendants, including the Secretary, have moved to dismiss Hueter's Complaint.  *See*

Federal Defs.' MTD, ECF No. 247 (Fed. MTD); Am. Samoa Govt. Defs.' MTD, ECF No. 248

(ASG MTD); Fono Defs.'s MTD, ECF No. 250.  Those motions raise a bevy of grounds for

dismissal, including lack of standing, lack of personal jurisdiction, improper venue, and failure to

state a claim.

## II.

When ruling on a motion to dismiss, the Court must "assume the truth of all material

factual allegations in the complaint and construe the complaint liberally, granting [the] plaintiff

the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v.

FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).  And plaintiffs bear the burden to

establish by a preponderance of the evidence that the Court has jurisdiction, including the

---

[2]  Hueter has filed multiple lawsuits in American Samoa, many of which state the same claims
that he brings now.  *See generally* Furlong Decl., Ex. 20 at 297–99, ECF No. 113-3.

"irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560.  The Court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Grand Lodge of Frat. Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).

Even if a court has jurisdiction, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court must "treat the complaint's factual allegations as true and must grant the plaintiffs the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).

Although represented now by counsel, Hueter filed the operative complaint *pro se*.  The Court assumes without deciding that Hueter is still entitled to the special solicitation courts grant *pro se* parties.  "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).  More, the Court must assess a *pro se* complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).  But *pro se* plaintiffs must still comply with the Federal Rules of Civil Procedure and the pleading standards set forth by the Supreme Court. *See Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009); *Butler v. Cal. State Disbursement Unit*, 990 F. Supp. 2d 8, 8–9 (D.D.C. 2013).

## III.

Now to apply those standards to the Secretary's motion.  But first some background.

Although American Samoa has its own government, the territory "remains under the ultimate

supervision of the Secretary of the Interior." *Tuaua v. United States*, 788 F.3d 300, 302 (D.C.

Cir. 2015).  Hueter relies on that supervisory authority to find the Secretary liable.  He asserts

that in her individual and official capacities she is liable "for the actions of the other Defendants

by virtue of [ ]her plenary authority over American Samoa."  TAC at 25.

In response, she raises many grounds for dismissal: lack of standing, lack of personal

jurisdiction, and failure to state a claim.  Considering her arguments, the Court will dismiss the

Secretary because Hueter lacks standing for most of his claims against her and has failed to

properly state his other claims.

### A.

As the Court must, it begins with the Secretary's jurisdictional challenges.  She asserts

that Hueter lacks standing for his claims and that the Court therefore lacks jurisdiction over the

entire case.  *See Fl. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) ("[A] showing

of standing is an essential and unchanging predicate to any exercise of [federal court]

jurisdiction.") (cleaned up).  The Court agrees as to some of Hueter's claims.

To have standing, Hueter must show that he suffered an "injury in fact" that is "concrete

and particularized," and "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of

Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  That injury must be Hueter's alone.  "[W]hen

the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a

large class of citizens, the harm alone" does not create an injury in fact.  *Warth v. Seldin*, 422

U.S. 490, 499 (1975).  More, Hueter must show that any injury is "fairly traceable to the

defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."
*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

For his claims about misuse of COVID relief funds, Hueter does not connect that alleged malfeasance to "a separate concrete interest of" his own. *Lujan*, 504 U.S. at 572. All citizens of American Samoa share his interest that public officials use funds lawfully. So his claims about those funds, without more, amount to a generalized grievance "held in common by all members of the public." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974).[3]

His claims about the fishing vessel fail on similar grounds. Hueter argues that allowing the boat to dock put his life "directly in danger." TAC at 62. But he relies only on speculation for that assertion. His Complaint says that the boat contained "a *potentially* Coronavirus carrying crew," *id.* (emphasis added), not that any crew had COVID or spread it onto the island. As alleged, any injury arising out of the boat's entry is thus "too speculative." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). More, every resident of American Samoa shares the risk of a COVID outbreak. Thus, Hueter again asserts a generalized grievance and accordingly lacks standing. *See Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013).

As for Hueter's claims against American Samoa's COVID-19 restrictions, he has standing for some but not others. At the time of his Complaint, American Samoa had prohibited between the hours of 9 p.m. and 5 a.m. all public gatherings, including religious services, the operation of all businesses, and the use of public transportation. *See* ASG MTD at 20, n.3 (describing the evolution of COVID-19 policies in American Samoa).

---

[3] The Court noted this deficiency in its order denying Hueter leave to file a fourth amended complaint. *See* Order at 5, ECF No. 123.

Hueter says that the restrictions violated his rights to assemble at night, to host charity fundraisers at night, to operate a business at night, and to ride public buses at night.  *See* TAC at 24, 36.  Missing from his Complaint is any assertion that he tried to do any of those things but could not because of the island's restrictions.  He thus asserts only infringements on rights that he never tried to exercise.  He lacks standing for those claims.  *See Warth*, 422 U.S. at 502 (noting that to establish standing, a plaintiff "must allege and show that they personally have been injured").

The Court does not agree with the Secretary, however, that Hueter lacks standing to assert his free-exercise claims.  The Secretary says that Hueter "fails to allege how he has sought to practice his religion during" the hours that American Samoa prohibited public gatherings. Fed. MTD at 22.  The Secretary ignores that Hueter sought injunctive relief from various Samoan authorities so that he could attend church "at or near the Samoan Unity Christian Church . . . specifically on Fridays after 9 PM and before 5 AM Saturdays." TAC at 24–26.  He also wanted to "attend late night Christmas 2020 and late night New Year's 2020/2021 services." *Id.* at 27.  This is not a generalized grievance—Hueter tried to attend church and could not because of the island's restrictions.  He thus asserts a particularized injury.  *Cf. Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 284, 294–96 (D.D.C. 2020).

So too for Hueter's claims against Chief Justice Kruse and Associate Justice Sunia, two Samoan judges.  Chief Justice Kruse allegedly told Hueter not to attend church when Hueter sought declaratory relief to do just that.  *See* TAC at 24–25.  And Justice Sunia likewise injured Hueter alone when Sunia failed to take action on Hueter's request for declaratory relief surrounding Christmas 2020 services.  *See id.* at 27.  Those actions affected only Hueter as he prosecuted his lawsuits.

These injuries are also traceable to the Secretary, though only just.  The parties admit that the Secretary seldom wades into the governance of American Samoa.  But relevant law vests her with "all civil, judicial, and military powers" of government there.  Exec. Order 10264, 16 Fed. Reg. 6417 (1951).  She thus can reverse any action by the island's Governor or judiciary.  *See Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Hodel*, 830 F.2d 374, 376-77 (D.C. Cir. 1987).  And as the D.C. Circuit has long held, this Court can order her "to take appropriate measures to correct any constitutional deficiencies" on the island.  *King v. Morton*, 520 F.2d 1140, 1144 (D.C. Cir. 1975).  Thus, the infringement on Hueter's religious rights by the two judges and by the island's COVID restrictions are redressable by the Secretary. Hueter thus has standing to assert those claims against her.[4]

## B.

The next question is whether those claims for which Hueter has standing still warrant dismissal on other grounds.  The Court holds that they do.

Hueter purports to sue the Secretary under 42 U.S.C. § 1983.  That statute allows suits against officials acting under color of "State or Territory" laws.  42 U.S.C. § 1983.  It does not authorize official-capacity suits against federal officials acting under federal law.  *See Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011); *see also Bundy v. Sessions*, 387 F. Supp. 3d 121, 127 (D.D.C. 2019) (dismissing claim against federal officials who allegedly conspired with state officials acting under color of state law), *aff'd,* 812 F. App'x 1, 2–3 (D.C. Cir. 2020).  One

---

[4]  The Secretary also argues that the case is moot because American Samoa has "lift[ed] the prohibition on religious services between the hours of midnight and 5 a.m." since Hueter filed his Complaint.  Fed. MTD at 22.  If true, that development would moot any claim for injunctive relief.  But Hueter requests compensatory damages for past deprivations of his religious rights. *See* TAC at 41.  Because the Court can award the requested damages for those past infringements, Hueter's damages claim is not moot.  *See PETA v. Gittens*, 396 F.3d 416, 420 (D.C. Cir. 2005).

could argue that Hueter means to sue the Secretary for her conduct under the territorial law of American Samoa. *See Majhor v. Kempthorne*, 518 F. Supp. 2d 221, 244 n.10 (D.D.C. 2007) (making this suggestion). But Hueter disclaims that theory. *See* Pl.'s Opp'n to Fed. MTD at 43, ECF No. 260 (Pl.'s Fed. Opp'n) ("Plaintiff is not asking that this Court deem the Secretary to be 'considered part of the American Samoa government rather than the Department of the Interior insofar as [s]he is being sued in [her] official capacity'" (quoting *Majhor*, 518 F. Supp. 2d at 244 n.10)). Section 1983 thus forecloses Hueter's suit against the Secretary in her official capacity. Under that statute, he can sue her only in her individual capacity.

Hueter also sues the Secretary for damages under the implied right of action recognized in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See* Pl.'s Fed. Opp'n at 42. *Bivens* authorizes suits against a federal official only in that official's *individual* capacity. *See Simpkins v. D.C. Gov't*, 108 F.3d 366, 368 (D.C. Cir. 1997). *Bivens* thus does not save Hueter's official-capacity suits against the Secretary. He is left therefore with claims under *Bivens* and § 1983 against the Secretary in her individual capacity.

Hueter has failed to state those claims. To assert either a *Bivens* or § 1983 claim, Hueter "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Hueter has not made that showing. He never alleges that the Secretary "participated in any decision or approved any policy [ ] related to [this] case." *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993). The one paragraph of his Complaint against the Secretary mentions only her plenary authority over the island. *See* TAC at 25. Hueter thus relies on simply a theory of *respondeat*

*superior*.  That theory of liability is, however, "inapplicable to *Bivens* and § 1983 suits." *Iqbal*, 556 U.S. at 676.  Hueter thus fails to state a claim against the Secretary.[5]

Hueter responds that the Secretary was personally involved because she failed to appoint "conflict-free" judges to the Samoan courts.  Pl.'s Fed. Opp'n at 26.  Hueter gives no detail for that statement.  And even if the Court could infer that the Secretary failed to appoint judges to Hueter's liking, he rests "essentially on the bare assumption that policy decisions made in Washington might have affected" his treatment in American Samoa.  *Cameron*, 983 F.2d at 258. Hueter must do more.  *See id.*  The Court also notes that any conflict in the judges appears to stem not from their appointment but from Hueter's repeated suits against them when they fail to grant his requested relief.  *See generally* Furlong Decl., Ex. 20 at 297–99.  The Court thus rejects his response as sufficient to state a claim.

\* \* \*

In sum, Hueter lacks standing for most of his claims against the Secretary.  And for the claims where he has standing, he has failed to state a claim.  That means that the only Defendant local to the District of Columbia—the Secretary—is not a proper party in this case.  The Court thus must "guard against the danger that" Hueter included the Secretary only to "manufacture venue" in the District.  *Cameron*, 983 F.2d at 256.  For this, the Court needs more briefing on venue.[6]

---

[5]  Hueter also mentions that Defendants violated the Religious Freedom Restoration Act (RFRA).  That claim likewise does not implicate the Secretary because vicarious liability alone cannot state a claim under RFRA.  *See Patel v. BOP*, 125 F. Supp. 3d 44, 56 (D.D.C. 2015).

[6]  True, courts usually analyze personal jurisdiction before venue.  *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).  But a court with "a sound prudential justification" may reverse that order.  *Dimondstein v. Stidman*, 986 F.3d 870, 871 (D.C. Cir. 2021) (cleaned up).  Here, deciding venue before personal jurisdiction "provides an easier resolution of the case." *Cameron*, 983 F.3d at 257, n.3.  Whether this Court has personal jurisdiction over all

Although Defendants asserted improper venue, *see* ASG MTD at 52, they have not briefed the issue.  The Court will order supplemental briefing.  In the meantime, it "is not in the interests of justice to further prolong the exposure of [Secretary Haaland] to personal liability in this litigation."  *Cameron*, 983 F.2d at 257 n.5.  The Court will grant her motion to dismiss all claims against her.

## III.

Also ripe is Hueter's motion that the Court reconsider its prior order denying him leave to file a Fourth Amended Complaint.  *See* Mot. to Reconsider, ECF No. 126 (MTR).  The Court denied leave to file because all of Hueter's proposed amendments were "futile."  Order at 1, ECF No. 123. The Court will not reconsider that interlocutory order unless Hueter shows (1) an intervening change in the law; (2) new evidence previously unavailable; or (3) clear error in the original order.  *See Klayman v. Jud. Watch, Inc.*, 296 F. Supp. 3d 208, 213 (D.D.C. 2018).

Hueter makes no such showing.  He complains that the Court was "hasty," "incorrect on the facts," and committed a "manifest error of law."  MTR at 1, 2, 11.  Beyond those vague assertions, Hueter recycles arguments that the Court already considered when it denied his original motion.  His arguments about judicial immunity and the Secretary's liability appeared in his briefing on the original motion to file a fourth complaint.  *See* Mot. for Leave to File, ECF No. 112.  The Court rejected them.  And although Hueter emphasizes that the Court committed "clear error" when it denied proposed claims for declaratory relief against Chief Justice Kruse

---

Defendants except the Secretary depends on Federal Rule of Civil Procedure 4(k)(2).  That Rule gives jurisdiction in any federal district court over defendants "not subject to jurisdiction in any *state's* courts of general jurisdiction."  Fed. R. Civ. P. 4(k)(2) (emphasis added).  The Court has found little persuasive authority on whether that Rule gives federal jurisdiction over defendants who, like the Samoan Defendants here, are subject to the jurisdiction only of *territorial* courts. In contrast, venue is relatively straightforward.

and Justice Sunia, Pl.'s Reply re. MTR at 4–5, ECF No. 211 (MTR Reply), nowhere does Hueter raise new legal arguments to rebut those Defendants' judicial immunity for their judicial acts, *see* Order at 3 (quoting *Jenkins v. Kerry*, 928 F. Supp. 2d 122, 134 (D.D.C. 2013)).

Hueter also reiterates that he cannot return to Samoan courts to have his rights vindicated. MTR Reply at 2, 4–5.  The Court has not ignored that fact—Samoan courts stayed Hueter's lawsuits well before the Court issued its Order.  Hueter thus presents no new evidence previously unavailable to the Court.  And the Court notes again that the purported inability of Samoan courts to adjudicate his claims arises from Hueter's own lawsuits against Samoan judges.  The Samoan courts have said as much in their orders staying his other lawsuits.  *See, e.g.*, Furlong Decl., Ex. 7 at 384–85, ECF No. 113-1 (staying case because Hueter had sued Chief Justice Kruse).  Hueter therefore offers no evidence of a clear error in the original order.

The Court will deny his motion for reconsideration.

## IV.

Finally, before the Court are motions from various parties for sanctions under Rule 11. In relevant part, Rule 11 authorizes sanctions when a party makes statements to the Court (1) with an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase" litigation costs, Fed. R. Civ. P. 11(b)(1); (2) that are frivolous or unwarranted by existing law, *see id.* 11(b)(2); or (3) lack evidentiary support, *see id.* 11(b)(3).  Hueter seeks sanctions under Rule 11(b)(3) for what he says are false assertions in two affidavits submitted by Samoan Defendants.  *See* Pl.'s Mot. for Sanctions, ECF No. 125.  The Samoan Defendants in turn seek

multiple sanctions against Hueter, including attorney's fees and an injunction against future suits against those Defendants.  *See* ASG Mot. for Sanctions, ECF No. 113 (ASG Mot.).

The Court will deny Hueter's motion.  He challenges a declaration from the Acting Treasurer of American Samoa, *see* Tausaga Decl., ECF No. 76-1, and another declaration from a physician in the territory's Department of Health, *see* Yip Decl., ECF No. 97-8.  Hueter must establish that the challenged statements lack factual support.  *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).  He has not done so.  Instead, he relies on conclusory assertions of his own to say that the challenged statements are untrue.  And although Hueter has filed many news articles that appear to rebut some statements in the challenged declaration, the Court cannot rely on those articles to say that Defendants' assertions "wholly lack evidentiary support." *Stankevich v. Kaplan*, 156 F. Supp. 3d 86, 97 (D.D.C. 2016).  Indeed, the veracity of these declarations is better suited for summary judgment—a stage that this litigation, despite over 300 filings, has not reached.

For Defendants' motion, they mischaracterize the strength of Hueter's claims.  In general, Defendants assert that Hueter's Complaint is frivolous because it "lack[s] any reasonable legal or factual basis for the exercise of this Court's personal jurisdiction" over the Samoan Defendants. *See* ASG Mot. at 30.  Yet Hueter relied on Rule 4(k)(2) in one of his oppositions, *see* Fed. Opp'n at 46–49, and asked for supplemental briefing on the applicability of that Rule to the other Defendants, *see* ECF No. 293.  As reflected by the Court's decision to explore venue first, personal jurisdiction under Rule 4(k)(2) is a complicated, hardly frivolous argument.  *See supra* n.6.  The Court thus declines to impose sanctions under Rule 11(b)(2).

Defendants also seek sanctions under Rule 11(b)(1), arguing that Hueter "is using this lawsuit to harass and impose unnecessary cost" on them.  Mot. at 31.  They ask the Court to

enjoin Hueter from filing any more actions in federal court.  The Court will not do so.  As best the Court can tell, this suit brings claims previously unadjudicated in federal court.[7]  That fact alone distinguishes this case from others where courts have entered a pre-filing injunction.  *See, e.g.*, *Urban v. United Nations*, 768 F.2d 1497, 1498–99 (D.C. Cir. 1985) (imposing a pre-filing injunction on plaintiff who filed 16 separate district court complaints); *Smith v. Scalia*, 44 F. Supp. 3d 28, 46–47 (D.D.C. 2014) (same for plaintiff with ten prior lawsuits in federal court); *Arnold v. Sec'y of the Navy*, No. 19-cv-2755 (JDB), 2020 WL 1930393 at *9 (D.D.C. Apr. 21, 2020) (imposing injunction when plaintiffs presented similar claims as in prior lawsuit and federal courts had written "lengthy decisions" rejecting those claims).

That this Court is the first federal court to pass on these claims also weighs against imposing any sanctions, much less an injunction.  *See Stankevich*, 156 F. Supp. 3d at 98.   And "[a]n injunction is an extreme sanction and should be imposed in only the most egregious cases." *In re Powell*, 851 F.2d 427, 434 (D.C. Cir. 1988).  As discussed, this action is not such a case. The Court will deny Defendants' motion.

That said, Hueter has taken liberties with the case docket.  He has filed several unnecessary motions, notices, and requests.  As of this writing, Hueter has 12 motions outstanding.  So many filings only frustrate judicial economy and increasingly burden Defendants.  And his tactics have made it harder for the Court to adjudicate his claims.  No case should require 305 docket entries before reaching a ripe motion to dismiss.  Yet that is the situation here, largely through Hueter's incessant filings.

---

[7]  Hueter has filed four lawsuits in the District of Hawaii, but none of them present the claims brought in this action.  *See* Furlong Decl., Ex. 20 at 297–99

This Court "may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." *Urban*, 768 F.2d at 1500.  The Court will fashion such injunctive relief if Hueter continues to flood the docket with filings beyond those ordered by the Court.[8]  *See Kaufman v. IRS*, 787 F. Supp. 2d 27, 36–37 (D.D.C. 2011).

### V.

For these reasons, the Court will grant the Secretary's motion to dismiss all claims against her.  The remaining parties shall submit briefing to the Court on venue given the Secretary's exit from the case.  The Court will also deny Hueter's motion for reconsideration, his motion for Rule 11 sanctions, and the Samoan Defendants' motion for Rule 11 sanctions.  A separate Order will issue.

Dated: March 18, 2022                                    TREVOR N. McFADDEN, U.S.D.J.

---

[8]  This admonition also applies in case number 21-cv-2342, Hueter's other lawsuit pending before this Court.