### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEVEN JAY PINCUS HUETER**, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-03686 (TNM) |
| **LEALAIALOA FRITZ MICHAEL KRUSE, et al.**, | |
| Defendants. | |

### <u>MEMORANDUM OPINION</u>

A plaintiff cannot sue anywhere he chooses. Aside from the prerequisites of personal and subject matter jurisdiction, a federal court simply might not be the most appropriate or convenient forum to adjudicate a controversy. In that case, the doctrine of *forum non conveniens* allows dismissal in favor of a better venue. This is such a case.

A resident of American Samoa, Steven Jay Pincus Hueter, sues the Government of American Samoa (the Government) and over 70 of its officials for various actions taken by the Government. He also sued the Secretary of the Interior, but the Court granted her motion to dismiss. *See Hueter v. Kruse*, No. 20-cv-3686, 2022 WL 823066 (D.D.C. Mar. 18, 2022). Before the Court now are motions to dismiss from the remaining Defendants, all of whom reside in American Samoa. Because the District of Columbia is a remarkably inconvenient place to litigate a dispute between American Samoans, the Court will grant the motions to dismiss for *forum non conveniens*.

### I.

As discussed in the Court's last opinion, Hueter's claims fall into four general buckets. He first alleges that the Government's early policies to stop the spread of COVID-19, including a

prohibition on public gatherings, violated several of his rights, including his right to exercise his religion.  *See* Third Am. Compl. at 25–27, ECF No. 104 (TAC).[1]  He also alleges that those restrictions violated the Religious Freedom Restoration Act (RFRA) and the Equal Protection Clause.  *See id.* at 20–21.

Next, he claims that members of the Fono—the American Samoan legislature—improperly used COVID relief funds.  *See id.* at 45–46, 56–57.  According to Hueter, the misuse of funds constituted a conspiracy to violate his equal protection rights, in violation of 42 U.S.C. § 1985(3).  *See id.* at 31.  Third, he challenges the decision to allow a fishing vessel to dock on the island without first passing through COVID protocols.  *See id.* at 59–63.  Hueter says that this decision also was a conspiracy intended to violate his rights.  *See id.* at 60.  Lastly, Hueter alleges violations of his rights by Chief Justice Kruse and Associate Justice Sunia during his lawsuits before the High Court of American Samoa.  *See id.* at 24, 27–28.

For relief, Hueter requests millions in damages, *see id.* at 41–42, an injunction against the docking of the fishing vessel, *see id.* at 63, and other injunctive relief, *see id.* at 37–39.

All members of the Government have moved to dismiss Hueter's Complaint.  *See* Am. Samoa Govt Defs.' MTD, ECF No. 248 (ASG MTD); Fono Defs.' MTD, ECF No. 250 (Fono MTD), Mamea Sala MTD, ECF No. 251 (Sala MTD).  The two judges are technically federal employees because the Secretary appoints them.  *See* Const. of Am. Samoa art. III, § 3.[2]  They have accordingly filed their own motion to dismiss.  *See* Federal Defs.' MTD, ECF No. 247 (Fed. MTD).  These motions raise many threshold grounds to dismiss the Complaint, including

---

[1]  All page citations refer to the pagination generated by the Court's CM/ECF system.

[2]  Available at https://asbar.org/revised-constitution-of-american-samoa/#sec303.

lack of standing, lack of personal jurisdiction, abstention doctrines, and *forum non covneniens*, as well as some merits grounds, like failure to state a claim.  The motions are now ripe for decision.

## II.

The Supreme Court recognized long ago the "very old" problem of plaintiffs misusing venue to force trial "at a most inconvenient place for an adversary."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).  Plaintiffs who used this tactic sought "not simply justice but perhaps justice blended with some harassment."  *Id.*  So courts developed the doctrine of *forum non conveniens* to deal with inappropriate forum-shopping.  *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 449–50 (1994).

*Forum non conveniens* is "essentially[ ] a supervening venue provision, permitting displacement of the ordinary rules" when a district court declines to exercise jurisdiction. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (cleaned up). It is a "threshold ground[ ] for denying audience on the merits," *id.* at 431 (cleaned up), and a court may invoke it before resolving subject matter or personal jurisdiction, *see id.* at 432.

A party seeking dismissal under *forum non conveniens* bears the burden to show both "(1) that an adequate alternative forum is available to hear the dispute, and (2) if so, that the balance of certain public and private interest factors strongly counsels in favor of trying the dispute in the alternative forum."  *In re Air Crash over the S. Indian Ocean on March 8, 2014*, 946 F.3d 607, 612 (D.C. Cir. 2020) (*Air Crash*).  The Court must balance these factors with some deference to the plaintiff's choice of forum.  *See Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 948 (D.C. Cir. 2019).  And although often invoked when the other forum is in a foreign nation, *forum non conveniens* also allows dismissal "where a state or *territorial* court serves litigational convenience best."  *Sinochem*, 549 U.S. at 430 (emphasis added); *see also* 14D

Wright and Miller, Federal Practice and Procedure § 3828, pp. 566-67, and nn. 5–6 (4th ed. 2013).  Above all, dismissal for *forum non conveniens* "is committed to the sound discretion of the trial court."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

## A.

The Court begins with Defendants' proposed alternative forum, the High Court in American Samoa.  *See* ASG MTD at 53.

"Generally, an alternative forum is adequate if the defendants are subject to service of process there and the forum permits litigation of the subject matter of the dispute."  *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 74 (D.D.C. 2017) (cleaned up). Courts have sometimes reframed the second requirement as whether the forum "would provide a plaintiff at least some remedy."  *Air Crash*, 946 F.3d at 613.

Through his prior lawsuits, Hueter has essentially conceded the adequacy of courts in American Samoa.  He has already sued most Defendants there.  *See* Decl. of Julia Furlong ¶¶ 6– 50, ECF No. 248-38 (Furlong Decl.).  Those suits make clear that all Defendants are subject to service of process in American Samoa.  Indeed, each has filed declarations attesting that they live and work there.  *See* Fed. MTD, Exs. 1–2; ASG MTD, Exs. 11–36; Fono MTD, Ex. 1–18; Sala MTD, Ex. 1.

Courts in American Samoa would also give Hueter some remedy.  They apply the Constitution and the laws of the United States, *see* Am. Samoa Code § 1.0201, meaning that they can hear and adjudicate Hueter's federal claims.  *See King v. Morton*, 520 F.2d 1140, 1144 (D.C. Cir. 1975) (finding courts in American Samoa "competent to adjudicate claims of Samoan litigants arising under the laws of the United States").  Hueter already knows this.  He filed largely identical claims there, implicitly admitting that those courts can adjudicate his claims and

remedy his alleged injuries.  *Accord Miller v. Tri Marine Fish Co., LLC*, No. 18-cv-4946, 2019 WL 1751827, at *4 (C.D. Cal. Jan. 22, 2019) (finding American Samoa an adequate alternative forum).

American Samoa is thus an adequate alternative forum.

## B.

Next, the Court balances the public and private interest factors.  Before that evaluation, however, the Court must determine the amount of deference due Hueter's choice of forum.

## 1.

*Forum non conveniens* starts with "a strong presumption in favor of a plaintiff's chosen forum."  *Air Crash*, 946 F.3d at 613 (cleaned up).  The precise degree of deference varies, however, depending on the plaintiff's connection to that forum.  A plaintiff who sues "in his home forum" receives the strongest presumption.  *Id.* at 614.  Courts afford less deference "when the forum is not the plaintiff's home forum and most of the events occurred elsewhere."  *Lans v. Adduci Mastriant & Schaumber L.L.P.*, 786 F. Supp. 2d 240, 293 (D.D.C. 2011) (cleaned up); *see Air Crash*, 946 F.3d at 614 ("A plaintiff who chooses to sue *in his home forum* receives the strongest presumption[.]") (emphasis added).  That said, a foreign plaintiff may still receive deference if the choice of forum "was motivated by legitimate reasons."  *Shi*, 918 F.3d at 950 (cleaned up).  But if "motivated by tactical advantage," a foreign plaintiff's choice receives diminished deference.  *Id.* (cleaned up).

Hueter is due little deference here.  For starters, he is not a D.C. resident.  To be sure, he does reside in an American territory and thus is unlike the typical foreign plaintiff "with minimal or no connections to the United States."  *Air Crash*, 946 F.3d at 614.  Yet the District of Columbia has no meaningful ties to the actions in Hueter's Complaint.  None of them occurred

5

here.  Only Hueter's inclusion of Secretary Haaland gave this dispute any connection to the District.  And those claims were meritless.  *See generally Hueter*.  Indeed, his inclusion of her appears a transparent attempt to "manufacture venue in the District of Columbia."  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).

And that attempt is meant "to harass the defendant[s]," not motivated by any legitimate reason.  *Shi*, 918 F.3d at 950 (cleaned up).  Hueter filed in American Samoa his original suit against the COVID restrictions.  *See* Furlong Decl. ¶ 6–23.  When he lost his motion for injunctive relief, Hueter sued the presiding judge of the panel.  *See id.* ¶¶ 25–26.  After that, he again sued, restating his claims about the COVID restrictions and alleging that Fono members had misused COVID relief funds.  *See id.* ¶¶ 30–34.  Rather than continue these suits, Hueter moved almost all the same claims here.

This history[3] reflects that he did so not to "take advantage of favorable law," *Piper Aircraft*, 454 U.S. at 249 n.15, but because courts in American Samoa had rejected his requests.  Yet he continued his efforts, despite repeated denials in his home forum.  Hueter seeks "justice blended with some harassment" by coming to this Court after so many adverse rulings elsewhere.  *Gulf Oil*, 330 U.S. at 507.

True, those American Samoa suits never included Justice Sunia as a defendant nor any challenges to the entry of the fishing vessel.  But Hueter has identified no reason why he could not bring those claims in American Samoa.  They are all based on federal law, which the courts in American Samoa also apply.  That Hueter could have brought those claims in American Samoa reinforces the harassing nature of his suit before this Court.

---

[3]  Although *forum non conveniens* is a non-merits determination, the Court may "brush with [the] factual and legal issues of the underlying dispute."  *Sinochem*, 549 U.S. at 433 (cleaned up).

Hueter largely does not contest any of this.  In fact, he makes no argument about *forum non conveniens*.  His closest response is that American Samoa lacks "conflict-free Justices," and thus he cannot return there for remedy.[4]  *See* Pl.'s Opp'n to Fed. MTD at 48, ECF No. 260 (Pl.'s Fed. Opp'n).  Not so.  Judges in American Samoa are not conflicted simply because of their rulings against Hueter.  And if the judges do have conflicts because of pending lawsuits against them, Hueter has only his litigiousness to blame.

In sum, the Court will give only limited deference to Hueter's choice of forum.

**2.**

To evaluate which forum the private interest supports, the Court considers (1) the relative ease of access to sources of proof; (2) the availability of process for compelling unwilling witnesses; (3) the cost to obtain attendance of willing witnesses; (4) the need to inspect the premises, if appropriate; and (5) all other practical problems that make trial easy, expeditious, and inexpensive.  *See Gulf Oil*, 330 U.S. at 508.

The first of these factors skews in favor of American Samoa.  On one hand, Hueter's Complaint implicates much documentary proof that the parties can electronically move to the District.  Indeed, the parties have already provided the Court with the Government's Emergency

---

[4]  The Court has never admitted his inability to return to American Samoa courts, despite what Hueter says in his most recent filing.  *See* Pl.'s Consol. Resp. on Venue at 2, n.1, ECF No. 326. In an earlier opinion, the Court refused to reconsider an order denying leave to file a fourth amended complaint.  Hueter argued that, as part of the refusal, the Court had disregarded his inability to return to Samoan courts.  *See* Pl.'s Reply in Support of Mot. for Reconsideration at 2, 4–5, ECF No. 211.  The Court responded that it "ha[d] not ignored that fact" in the earlier Order, *Hueter*, 2022 WL 823066, at *6, meaning that, regardless of the veracity of Hueter's assertion, the Court had already considered it, preventing reconsideration on that basis. At no point did the Court assume or concede that Hueter was correct about his inability to appeal in American Samoa.

Declarations.  *See* ASG MTD, Exs. 1–10.  And a transcript would memorialize Hueter's hearing before Chief Justice Kruse, as would other documents showing expenditures by Fono members.

But Hueter's claims also require witnesses.  For example, Hueter says that a Government employee met the fishing vessel once it bypassed the mandatory quarantine.  *See* TAC at 60. That person might need to testify about why the Government apparently let the boat through undisturbed.  Likewise, Hueter's conspiracy allegations, *see id.* at 25, 26, 27, 31, require evidence of agreement "for the purpose of" violating his constitutional rights, *Mazloum v. District of Columbia*, 442 F. Supp. 2d 1, 10 (D.D.C. 2006).  Hueter presumably would have to introduce testimony to make that showing.  Any witnesses for that and other purposes are much easier to access in American Samoa, where they live and work.

The second factor is in equipoise.  Courts in American Samoa certainly can compel the attendance of other American Samoans.  *See* Am. Samoa R. Civ. P. 45(e).  As for this Court, it assumes that it could compel the appearance of any unwilling witnesses because American Samoans "reside in the United States."[5]  *Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29, 35 (D.D.C. 2006); *cf. United States v. Lee*, 472 F.3d 638, 643 (9th Cir. 2006) (granting jurisdiction to federal courts for crimes in American Samoa).

The Court comfortably makes that assumption because the third factor so strongly favors American Samoa.  The District is about 7,000 miles and six time zones away.  Travel costs over that distance are astronomical.  In contrast, American Samoa has a total land area of 76 square

---

[5]  By this assumption, the Court does not decide or intend to decide whether service of a subpoena would create personal jurisdiction.  Such a decision is unnecessary in this analysis. *See Sinochem*, 549 U.S. at 432 (allowing a district court to use *forum non conveniens* to "bypass[] questions of subject-matter and personal jurisdiction[.]"

miles.[6]  Witnesses thus would travel much shorter lengths and at much less cost if this case

proceeded only in American Samoan courts.  *See MBI Grp., Inc. v. Credit Foncier du Cameroun*,

558 F. Supp. 2d 21, 33 (D.D.C. 2008), *aff'd*, 616 F.3d 568 (D.C. Cir. 2010) (dismissing when

witnesses would make a "lengthy trip" to Cameroon and "no similar burden [was] involved in

conducting the litigation in Cameroon").  So too would the parties, who all reside in American

Samoa.  *Accord Miller*, 2019 WL 1751827, at *7 (dismissing even when some plaintiffs would

have to travel from continental United States to American Samoa).  And yet again, Hueter's

lawsuits in American Samoa acknowledge that forum as a convenient one.

    The fourth private interest factor is inapplicable.  None of Hueter's claims require

viewing any premises.

    The Court's foregoing discussion of the other factors largely addresses "practical

problems" with having trial in the District.  *Gulf Oil*, 330 U.S. at 508.  A final practical problem

of a D.C. trial is the "heavy burden" on the 70-plus Defendants with no "specific reasons of

convenience" from Hueter as to why he chose the District for this case.  *Piper Aircraft*, 454 U.S.

at 249.  Indeed, the District is likely not even a convenient forum for Hueter.  He lives in

American Samoa and will bear the same expense as Defendants should trial proceed here.

Without an explanation on convenience, and given his previous actions in American Samoa, the

Court falls back on its prior conclusion:  Hueter sued in the District not out of convenience, but

"in order to harass the defendant[s]."  *Piper Aircraft*, 454 U.S. at 249 n.15.  "Dismissal in favor

of suit elsewhere" is appropriate in such a circumstance.  *Shi*, 918 F.3d at 950.

    The private interest factors thus favor litigation in American Samoa.

---

[6]  *See American Samoa*, National Marine Sanctuary of American Samoa, available at
https://americansamoa.noaa.gov/learn/american-samoa.html (last accessed June 10, 2021).

**3.**

In its public interest analysis, the Court considers (1) the administrative difficulties caused when litigation piles up in congested centers; (2) the burden of jury duty on a community that has no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the chance that the Court will confront choice-of-law problems or need to interpret foreign law. *See Shi*, 918 F.3d at 952 (citing *Gulf Oil*, 330 U.S. at 508–09).

As for the first factor, the District is "thousands of miles away from the majority of witnesses and [ ] evidence[.]" *MBI Grp.*, 558 F. Supp. 2d at 34 (cleaned up). Administrative difficulties at such a great distance are "obvious." *Id.* (cleaned up). Those difficulties appear most glaringly in the expense of travel time for all parties to reach the District.

And although the Court cannot estimate the backlog of cases in American Samoa, this district had 4,320 cases pending as of March 2022.[7] The Court believes that American Samoa courts have many fewer active cases and thus are more likely to reach an expeditious resolution of this case. *See Miller*, 2019 WL 1751827, at *8. Indeed, had Hueter stuck with American Samoa courts, he would probably have a resolution by now.

The Court takes the second and third factor together. "[T]his dispute centers on [American Samoa] and [ ] everything relevant to the dispute happened in [American Samoa]." *MBI Grp.*, 558 F. Supp. 2d at 34 (cleaned up). It concerns choices made by the American Samoa Government to combat COVID. The District has no relationship with those choices—especially without the Secretary as a Defendant—nor with the Government that made them. As a result, American Samoa has "a stronger interest in deterring" the conduct in Hueter's

---

[7] *See* https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2022/03/31.

Complaint.  *Irwin*, 448 F. Supp. 2d at 36.  For example, American Samoa has a keen interest in the proper ways to screen incoming vessels for COVID.  So too for its general COVID restrictions, which impact only American Samoans.  In that sense, Hueter presents a "localized" controversy involving no other forum except American Samoa.  *Gulf Oil*, 330 U.S. at 509.

Of course, possible infringements on constitutional rights should concern all Americans. But those deprivations are best handled by a nearby community, not one "which has no relation to the litigation."  *Wye Oak Tech., Inc. v. Repub. of Iraq*, 941 F. Supp. 2d 53, 58 (D.D.C. 2013) (cleaned up).  The District is not nearby.  Everything occurred 7,000 miles away from D.C. residents.  As a result, jury duty would impose a burden on Washingtonians, supporting resolution of this case in American Samoa, not the District.

The fourth factor is in equipoise.  Hueter brings federal law claims that either forum can competently resolve.  Thus, three of the four public interest factors favor American Samoa as the appropriate forum for this case.  In sum, the private and public interest factors support trying this case in American Samoa.

*   *   *

A related note deserves mention.  Hueter's Complaint raises thorny questions of jurisdiction under Federal Rule of Civil Procedure 4(k)(2), the federal long-arm statute. According to Samoan Defendants, that unique provision does not give personal jurisdiction in any federal court over an American Samoan.  *See* ASG Defs.' Reply at 20, ECF No. 305.  Hueter objects, arguing that if Defendants are right, American Samoan plaintiffs can access no federal court without a state long-arm statute.  *See* Pl.'s Opp'n to ASG MTD at 16, ECF No. 302. According to him, Rule 4(k)(2) grants personal jurisdiction in *any* federal district court over American Samoan defendants.  *See* Pl.'s Fed. Opp'n at 47–50.

The Court endorses neither position in this consequential debate.  But even if Huerter is correct that American Samoan cases are uniquely adjudicable in any federal district court, the District of Columbia remains inconvenient for a dispute between American Samoans.  If Hueter insists on a federal court, the District of Hawaii is much closer to the parties, available evidence, and necessary witnesses.  He could sue in the federal court there.  Indeed, he already has against many of the same Defendants.  *See* Furlong Decl. ¶¶ 51–71; *see also Hueter v. Kruse*, No. 21-226, 2021 WL 5989105 (D. Haw. Dec. 17, 2021).  In contrast, this district is almost as far from American Samoa as a federal court could be.

Because the balance of factors favors suit in American Samoa, the Court will grant the pending motions to dismiss.[8]  Hueter's Complaint will be dismissed without prejudice.  *See United States v. Nat'l City Lines*, 334 U.S. 573, 591 (1948) (authorizing dismissal without prejudice under *forum non conveniens*).

### III.

Remaining are Hueter's motions for sanctions against the Federal Defendants, *see* ECF No. 237 (Mot. for Sanctions), and his motion to disqualify defense counsel, *see* ECF No. 309 (Mot. to Disqualify).  Because the Court could adjudicate these motions even if it lacked

---

[8]  This disposition resolves many of the other pending motions in this case.  The Court will deny as moot the motion from Mitzie Jessop Ta'ase, a former member of the COVID task force, to file out of time her motion to dismiss.  *See* ECF No. 287.  The Court will also deny Hueter's motions to have the U.S. Marshals re-serve his Complaint, *see* ECF No. 273, and to strike a substitution of counsel filing, *see* ECF No. 252.  Hueter also seeks to supplement his oppositions with thirteen new exhibits about the current restrictions in American Samoa.  *See* ECF No. 319.  The Court will deny that motion because even if included, those exhibits do not change the Court's decision.  Finally, Hueter has filed multiple requests asking the Court to enter default against various Defendants.  *See* ECF Nos. 255–59.  Even if these motions survive the Court's ruling, the Court will deny them because Hueter did not ask the Clerk of Court to enter default, as required by Federal Civil Rule 55(a).  *See* Fed. R. Civ. P. 55(a); *Peak v. District of Columbia*, 236 F.R.D. 13, 15 (D.D.C. 2006) (denying motions for entry of default on same basis).

jurisdiction over the case, *see Willy v. Coastal Corp.*, 503 U.S. 131 (1992) (motion for sanctions); *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928 (8th Cir. 2014) (motion to disqualify), the Court assumes it can adjudicate them now despite the threshold dismissal on *forum non conveniens* grounds. These motions also might be relevant if, after dismissal without prejudice, the case continues.

### A.

Hueter moves for sanctions under Federal Rule of Civil Procedure 11. Hueter says that counsel for the Federal Defendants violated local rules when he filed Notices of Substitution of Counsel without a signature from the represented parties. *See* Mot. for Sanctions at 2–3 (describing ECF Nos. 198, 200–201); *see also* LCvR 83.6(b) (when another attorney has entered an appearance on behalf of a represented party, a previous attorney withdraws by filing a notice signed by the attorney and the party). According to Hueter, those Notices are "unwarranted by existing law." Mot. for Sanctions at 2.

Sanctions under Rule 11 are "an extreme punishment" reserved for filings "that frustrate judicial proceedings." *Naegele v. Albers*, 355 F. Supp. 2d 129, 144 (D.D.C. 2005). The Court does not impose them "lightly," *see id.*, and whether to grant sanctions under Rule 11 rests firmly in the Court's discretion, *see Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002).

The Court will deny Hueter's motion. Even if deficient under the local rules, the Notices do not rise to a level of misconduct justifying sanctions. The Court has noticed no frustration of judicial proceedings from those filings, nor has Hueter suggested that they hindered the

prosecution of his case in any way.  Instead, any delay springs from Hueter's own tactics, not Defendants'.[9]  *See Hueter*, 2022 WL 823066, at *7.

**B.**

Hueter moves to disqualify defense counsel because Defendants accused of misusing COVID relief funds have "adverse interests to each other."  Mot. to Disqualify at 5.  He argues that because misuse of federal funds is a federal crime, many Defendants will want to avoid a civil judgment saying that they essentially committed that crime.  *See id.*  But social customs in American Samoa (he says) force lower-status Samoans to defer to those higher in status, meaning that a lower-status Defendant might not pursue settlement of this action out of deference to higher-status Defendants.

Disqualification of an attorney "is highly disfavored," and any motion to disqualify "is therefore examined with a skeptical eye."  *United States v. Crowder*, 313 F. Supp. 3d 135, 141 (D.D.C. 2018).  Hueter's speculations about how Samoan customs play out among Defendants is not enough to meet his "high burden" to disqualify Defendants' counsel of choice.  *Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 208 (D.D.C. 2013).

Two final matters remain.  *First*, the Samoan Defendants ask the Court to strike Hueter's motion to disqualify.  *See* Def.'s Opp'n to Mot. to Disqualify at 42, ECF No. 313.  The Court need not strike the motion because it fails to meet Plaintiff's applicable burden and will be denied on that basis.

*Second*, the same Defendants ask the Court to order Plaintiff to show cause why he should not be held in contempt.  *See id.*  True enough, this Court entered an Order prohibiting

---

[9] More, Rule 11 by its own terms punishes "claims, defenses, and other legal contentions" when they are not "warranted by existing law."  Fed. R. Civ. P. 11(b)(2).  The Notices include no legal content, undermining Hueter's assertion that Rule 11 authorizes sanctions for errors in them.

Hueter from filing more motions without leave of Court.  *See* Order, ECF No. 289.  And

Hueter's motion to disqualify arguably violated that Order.  But the Court entered it when Hueter

represented himself and had loaded the docket with several unnecessary motions.  Hueter has

since retained an attorney, prompting many fewer filings.

More, Hueter deserves the full benefit of an attorney.  A blanket prohibition would deny

him that.  So, relying on the Court's "prerogative to manage its docket, and its discretion to

determine how best to accomplish this goal," the Court will deny Defendants' motion to show

cause. *Jackson v. Finnegan, Henders, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C.

Cir. 1996).

## IV.

For all these reasons, the Court will grant the pending motions to dismiss and will deny

all other motions as explained herein.  A separate Order shall issue.


Dated: June 18, 2022                                      _____

                                                          TREVOR N. McFADDEN, U.S.D.J.